**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AMICORP MANAGEMENT LIMITED, a
British Virgin Islands company, and
AMICORP LIMITED, a Hong Kong
company,

        Plaintiffs/Counter-
        Defendants,

v.

INSIGHT SECURITIES, INC., a
Delaware corporation, and CARLOS
LEGASPY, individually,

        Defendants/Counter-
        Plaintiffs.

No. 19-cv-03745
Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Insight Securities, Inc. (Insight), a securities broker-dealer, and its president,

Carlos Legaspy (Legaspy), (collectively, the Insight Parties) filed a two-count

Counterclaim against Amicorp Management Limited (Amicorp Management) and

Amicorp Limited (an umbrella entity which conducted business as Amicorp

Management) (collectively, the Amicorp Parties). In their Counterclaim, the Insight

Parties seek a declaratory judgment in Count I and seek contribution in Count II. R.

50, Countercl.[1] In essence, they allege that the Amicorp Parties' negligence was the

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Additionally, the Insight Parties appear to have inadvertently labeled their contribution counterclaim as Count I where the preceding declaratory judgment counterclaim is also labeled as Count I. *See* Countercl. ¶¶ 49–60. The Court disregards this error and construes

root cause of Insight's transfer of over $6 million worth of securities from non-party Clodi Holdings Ltd. (Clodi)'s customer account, where the transfers were not authorized by Clodi and were allegedly prompted by forged transfer instructions. Countercl.

On December 16, 2019, the Amicorp Parties moved to dismiss the declaratory relief counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) and moved to dismiss the contribution counterclaim pursuant to Rule 12(b)(6). R. 55, Amicorp Mot. Dismiss. On May 24, 2021, before the Court ruled on the pending motion to dismiss, the Insight Parties filed a motion for leave to file an Amended Counterclaim (R. 77, Insight Mot. Leave Amend), which as clarified in their reply brief in support (*see* R. 82, Insight Reply Leave Amend at 5 n.2), would assert only a common-law negligence counterclaim. For the reasons that follow, the Insight Parties' motion for leave to amend is denied, and the Amicorp Parties' motion to dismiss is stricken as moot.

## Background

In December 2016, Amicorp Management (a firm that provides directors, management, and clerical services to business entities) opened a customer account for Clodi (a British Virgin Islands company) with securities broker-dealer Insight. Countercl. at ¶¶ 10, 13, 17. Amicorp Management, as the sole director of Clodi, handled Clodi's customer account application, including selecting the email address

---

the Counterclaim as asserting a declaratory judgment claim in Count I and a contribution claim in Count II.

to which Insight (through its clearing firm, Pershing LLC (Pershing)) would send confirmations, monthly statements, and notices relating to the Clodi account. *Id.* ¶ 13, 16–17, 19. In early January 2017, as part of the initial application process, Amicorp Management selected email addresses for specific Amicorp employees to receive all Clodi account notifications (l\*\*\*\*\*\*\*\*@amicorp.com and k\*\*\*\*\*\*\*\*@amicorp.com). *Id.* ¶¶ 19–21. On January 18, 2017, however, Amicorp Management changed the notification email address to a generic bankstatements@amicorp.com email address, which was not regularly monitored. *Id.* ¶¶ 22, 27.

Meanwhile, Amicorp Management had also permitted Clodi account access to Total Advisors, LLC (a Cayman Islands registered investment advisor who acted as an agent for Amicorp Management) (Total). Countercl. ¶ 24. Through this account access, Total had the ability to change the email address for electronic notifications relating to the Clodi account. *Id.* At some point between March 2 and 6, 2018, Fernando Haberer (Haberer), an affiliate of Total, de-enrolled Clodi from electronic notifications and changed the email address to that of a personal account. *Id.* ¶ 25–26. A de-enrollment notice was sent to bankstatements@amicorp.com, but because Amicorp Management was not actively monitoring the email inbox, it was allegedly unaware of this unauthorized change to the notification email address. *Id.* ¶ 27. On March 8, 2018, Haberer then sent a forged transfer request instructing Insight to transfer holdings in Clodi's Insight account to a Cayman Island broker-dealer. *Id.* ¶ 29. The Pershing system sent an electronic notification of this transfer to the new

Total personal email account. *Id.* Meaning that again, Amicorp Management was not notified of the transfer. *Id.* at ¶ 30. Haberer sent another forged transfer instruction on March 15, 2018 to the same effect. *Id.* ¶ 31.

On May 14, 2018, two months later, an Amicorp employee learned about the over $6 million in unauthorized transfers for the first time after contacting Insight about issues with account access. Countercl. ¶ 34. Through these communications, the employee also learned that what she thought was the March 2018 monthly statement was actually a forged statement. *Id.* ¶ 35.

Following these events, on January 19, 2019, Clodi filed a Statement of Claim with FINRA, naming the Insight Parties and Pershing in *Clodi Holdings v. Legaspy, et al.*, FINRA Arbitration No. 19-00137 (Clodi FINRA Arbitration). R. 1, Compl. ¶ 7. The Insight Parties proceeded to file third-party claims against the Amicorp Parties (and other associated individuals), seeking to hold the Amicorp Parties liable for any arbitration award entered against the Insight Parties. *Id.* ¶ 12. In April 2019, the Director of FINRA Office of Dispute Resolution denied the Amicorp Parties' request to be dismissed as third-party respondents in the FINRA Arbitration. *Id.* ¶ 19. And in response (and what brings the parties to federal court), the Amicorp Parties initiated this suit, arguing that they were not subject to FINRA jurisdiction and seeking to enjoin the Insight Parties from pursuing their third-party claims in the Clodi FINRA Arbitration. *Id.* ¶¶ 1–3.

The Court[2] subsequently entered a Stipulation and Agreed Order, which memorialized an agreement between the parties by which (i) the Insight Parties would dismiss their third-party claims against the Amicorp Parties from the Clodi FINRA Arbitration; (ii) the Amicorp Parties would voluntarily dismiss their Complaint against the Insight Parties for declaratory and injunctive relief (*see* Compl.); and (iii) the Insight Parties would promptly file the now challenged Counterclaim (*see* Countercl.). *See* R. 49, Stipulation and Agreed Order. In other words, the parties agreed that the Amicorp Parties would be dropped from the Clodi FINRA Arbitration, and the Insight Parties would be dropped as defendants in this suit and would be permitted to file a counterclaim. *Id*. at 1–2.[3]

In their Counterclaim, the Insight Parties alleged that had the Amicorp Parties exercised due care to effectively monitor the Clodi account, they would have immediately known about the unauthorized transfers. Further, had the Amicorp Parties not used Total as an agent, Total would not have had the ability to effectuate fraudulent transfer requests. The Insight Parties sought a declaration from the Court finding that the Amicorp Parties in fact proximately caused Clodi's losses (Countercl. ¶¶ 49–59) and an order requiring the Amicorp Parties to contribute their pro rata share to any award entered against the Insight Parties in the related FINRA arbitration under the IJTCA. *Id*. ¶¶ 60–63.

---

[2]This case was pending before Judge Lee until it was reassigned to the Court on September 28, 2020. *See* R. 73, Min. Entry.

[3]To be clear, the Stipulation and Agreed Order dismissed the Complaint (R. 1), and as such, Counterclaim Counts I and II are the only operative claims in this suit. *Id*.; *see also* R. 53, Mot. Dismiss Memo. at 2 n.2.

The Amicorp Parties (as contemplated in the Stipulation and Agreed Order) then moved to dismiss the Counterclaim under Rules 12(b)(1) and 12(b)(6). *See* Amicorp Mot. Dismiss. They argue that the declaratory relief counterclaim should be dismissed for lack of subject matter jurisdiction, because the claim was not yet ripe for adjudication, and that the contribution claim should be dismissed for failure to state a claim.

Before this Court ruled on the pending motion to dismiss, the Insight Parties filed a motion for leave to amend their counterclaim and included a proposed amended counterclaim. *See* Mot. Leave Amend. The initially proposed Amended Counterclaim (Insight Mot. Leave Amend at 4–19, Am. Counterclaim) asserted two counterclaims, a negligence claim (in place of the former declaratory relief claim) and a contribution claim. The Insight Parties, then filed *another* proposed Amended Counterclaim (Insight Reply Leave Amend at 12–28, Rev. Am. Countercl.) as an attachment to their reply brief in support of the motion for leave to amend. The Insight Parties explained that the Clodi FINRA Arbitration had settled, which rendered the original declaratory relief claim moot and any contribution claim moot. *See* Insight Reply Leave Amend at 5. As such, the Insight Parties sought to withdraw their proposed contribution counterclaim and assert one counterclaim only— negligence. *Id.* at 5 n.2. The Insight Parties represented that the attached Revised Amended Counterclaim was identical to the initially filed proposed Amended Counterclaim but for the deletion of the contribution claim. *Id.* at 10.

In yet another new development, the Amicorp Parties brought to the Court's attention that the Insight Parties' Revised Amended Counterclaim was *not* identical to the first proposed Amended Counterclaim and instead included several revisions to and several deletions from the factual allegations in the proposed negligence counterclaim. R. 84, Amicorp Mot. Surresponse Leave Amend ¶ 1. The Insight Parties insist that neither revisions nor deletions were made to the Revised Amended Counterclaim, and it was revised only in that it now contains one counterclaim—negligence. R. 85, Insight Surreply Leave Amend at 1–2. Although it appears that there were some undisclosed changes from the initially proposed Amended Counterclaim and the Revised Amended Counterclaim, rather than engage in that largely unproductive analysis, the Court will, for purposes of this Opinion, consider the Revised Amended Counterclaim as the proposed operative amended counterclaim. Indeed, the Amicorp Parties argue that even considering these revisions, the Insight Parties have not and cannot state a negligence claim upon which relief may be granted. R. 88, Amicorp Surresponse Leave Amend at 1.

To summarize this complicated procedural history, although two motions are currently pending before this Court, the Amicorp Parties' motion to dismiss the original Counterclaim is moot, as the Insight Parties have conceded that their original declaratory judgment and contribution claims (the claims challenged by the motion to dismiss) are moot in light of the settlement of the Clodi FINRA Arbitration. *See* Insight Reply Leave Amend at 5. This leaves the Insight Parties' motion for leave to amend, by which they propose to assert a negligence counterclaim only. The issue

before the Court then, is whether allowing the Insight Parties to file a negligence counterclaim would be futile. For the reasons below, the Court finds that it would be.

## Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." The rule takes a liberal approach to allowing amendments. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). But a district court may refuse leave to amend where amended would be futile. *Bogie v. Rosenberg*, 705 F. 3d 603, 608 (7th Cir. 2013) (noting that leave to amend need not be granted if it is clear that amendment would be futile). "The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted . . . . This standard is the same standard of legal sufficiency that applies under Rule 12(b)(6)." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F. 3d 1074, 1085 (7th Cir. 1997) (internal quotation marks and citations omitted).

A motion to dismiss under Rule 12(b)(6)[4] challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual

---

[4]As explained above, the Amicorp Parties' motion to dismiss the declaratory relief counterclaim for lacking ripeness is now moot. As such, the Court need not analyze whether it has subject matter jurisdiction under Rule 12(b)(1). The Court notes further that the proposed negligence counterclaim is anchoring subject matter jurisdiction (via diversity) in this case.

allegations, accepted as true, sufficient "to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

## Analysis

As previously stated, only one issue remains before the Court—whether it would be futile to allow the Insight Parties[5] to assert a negligence counterclaim in this case if the proposed counterclaim fails to assert a negligence cause of action. In their proposed negligence counterclaim, the Insight Parties allege that the Amicorp Parties were aware that Amicorp Management was required to exercise due care and proper due diligence in monitoring its agent's (Total's) activities with respect to the Insight account. Rev. Am. Countercl. ¶ 64. The Insight Parties further allege that the Amicorp Parties' failure to monitor the electronic notices and communications regarding the Insight account led to a failure to discover that Total was exceeding its authority and that Haberer was making fraudulent transfers. *Id.* ¶ 65. The Insight

---

[5]In a footnote, the Amicorp Parties contend that "[o]n its face, the proposed Amended Counterclaim is brought on behalf of both Insight and Legaspy against Amicorp Management and Amicorp Limited . . . , but the substantive allegations in the remaining paragraphs repeatedly refer to only Amicorp Management, Insight, and/or "Counter-plaintiff" in the singular. Amicorp Resp. Leave Amend at 4 n.3. The Amicorp Parties insist that "[f]or this reason alone, the proposed Amended Counterclaim fails to state any viable claim on behalf of Legaspy or against Amicorp Limited." *Id.* The Court first notes that arguments made in footnotes are typically waived. *See Sanders v. JGWPT Holdings, Inc.*, 2016 WL 4009941, at *10 (N.D. Ill. July 26, 2016) (citing *U.S. E.E.O.C. v. Custom Cos.*, 2007 WL 1810495, at *4 (N.D. Ill. June 21, 2007)). But even entertaining this contention, the Court disagrees. While not all allegations reference the Insight Parties and the Amicorp Parties in the plural, the Insight Parties have alleged that "Counter-Defendant*s*'" negligence caused "Counter-Plaintiff*s*" to incur millions of dollars of damages. Rev. Am. Countercl. ¶ 60 (emphasis added).

Parties further claim that the Amicorp Parties' breach of their duty of care in the form of "silence and inaction" was the foreseeable and proximate cause of all losses the Insight Parties suffered. *Id.* ¶ 73.

## I.    Choice of Law

As a threshold matter, the Court must determine which state's law governs the proposed negligence claim. No party presents a cogent argument for the Court's consideration. The Amicorp Parties do not affirmatively suggest which state law should apply and instead argue that the Insight Parties cannot assert a negligence claim under either Illinois or New York law. R. 80, Amicorp Resp. Leave Amend at 5–8. The Insight Parties also do not argue for a particular state's law to apply and instead (confusingly) cite Illinois and New York state law (in addition to cases from the Seventh Circuit, the Northern District of Illinois, the District of Maryland, the Eastern District of Michigan, and the Supreme Court of Alabama) in their reply brief. *See* Insight Reply Leave Amend at 5–9. The Court notes that while the original Counterclaim alleged that "Clodi's account agreements with Insight and Pershing specify that New York law governs any dispute between Clodi and Pershing or Insight" (Countercl. ¶ 37), the Revised Amended Counterclaim—which the Court is considering as the operative proposed counterclaim—does not include the same allegation (*see generally* Rev. Am. Countercl.). Moreover, even if that allegation were included, the Court is not persuaded that said choice of law provision in the *arbitration* sections of the Clodi/Pershing and Clodi/Insight account agreements govern the parties to this federal lawsuit. *See* Countercl., Exh. A. Pershing New

10

Account Agreement at 14 (Under "13. ARBITRATION DISCLOSURES," "THE LAWS OF THE STATE OF NEW YORK GOVERN.") (capitalization in original); Amicorp Resp. Leave to Amend, Exh. 1, Insight New Account Agreement at 4 (Under "ARBITRATION," "THE LAWS OF THE STATE OF NEW YORK GOVERN.").[6] As such, the Court disagrees that the New York choice of law provision referenced in the original Counterclaim controls this lawsuit.

"Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (internal citations omitted). As the Court sits in Illinois, it looks to Illinois' choice of law rules. For tort actions, the Illinois choice of law rules dictate that "the most significant contacts test outlined in the Restatement (Second) of Conflict of Laws (1971) be used." *McLain v. S. Packaging Mach., Inc.*, 2007 WL 3037095, at *1 (N.D. Ill. Oct. 17, 2007) (internal quotation marks and citations omitted). To determine which state has the most significant contacts, the following factors are considered: "(a) The place where the injury occurred. (b) The place where the conduct

---

[6]The Insight Parties failed to attach the New Account Agreement between Insight and Clodi to any of their counterclaims or briefs, despite referencing it several times in their Counterclaim, proposed Amended Counterclaim, and proposed Revised Amended Counterclaim. The Amicorp Parties attached the Insight New Account Agreement to their response to the motion for leave to amend. *See* Amicorp Resp. Leave Amend at 2 n.1. Because the Amicorp Parties' response to the motion for leave to amend acts like a Rule 12(b)(6) motion to dismiss, and the Seventh Circuit has held that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [their] claim," (*Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)), the Court considers the Insight New Account Agreement.

occurred. (c) The domicile, nationality, place of incorporation and place of business of the parties. (d) The place where the relationship of the parties is centered." *Id.*

In the instant case, the Insight Parties have alleged that both the conduct and the injury took place in Illinois. Rev. Am. Counterclaim ¶ 6 ("The Counter-Defendants' acts giving rise to this action were communicated to Insight at its highland Park, Illinois office and the damages suffered herein accrued in Lake County, Illinois."). Illinois has the most significant contacts in this dispute. And no party specifically contests the application of Illinois law. The Court accordingly finds that Illinois law should govern the negligence counterclaim here. To state a cause of action for negligence under Illinois law, a plaintiff must allege: 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty of care; and 3) an injury proximately caused by that breach. *Monson v. City of Danville*, 115 N.E.2d 81, 95 (Ill. 2018).

## II.     The *Moorman* Doctrine

Turning to the merits, the Amicorp Parties first argue that the Illinois economic loss rule, also known as the *Moorman* Doctrine, bars the Insight Parties' negligence counterclaim. *See* Amicorp Resp. Leave Amend at 5; *see also* Amicorp Surresponse Leave Amend at 2–3. Under the *Moorman* Doctrine, a plaintiff cannot recover "in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E. 2d 443, 453 (Ill. 1982)).

The Amicorp Parties point to the following allegation in the Revised Amended Counterclaim and contend that the Insight Parties are improperly disguising a breach of contract claim as a negligence claim: "And, as Amicorp Management acknowledged and agreed in its Pershing account agreement, its monitoring of the Clodi account was necessary to determine whether errors or unauthorized activity was occurring: [Paragraph 7 excerpt from the Pershing New Account Agreement at 13)]." Amicorp Surresponse Leave Amend at 3 (citing Rev. Am. Countercl. ¶ 26).

In response, the Insight Parties insist that the *Moorman* Doctrine does not apply, because the Amicorp Parties have already conceded that they are not parties to any contract between Clodi and Insight or Clodi and Pershing and only signed the account agreements in "representative capacity." Insight Reply Leave Amend at 7; *see also* Compl. ¶¶ 1–2, 13–16. The Insight Parties also contend that the negligence claim clearly states that the duty underlying the Amicorp Parties' negligence was premised on "legal obligations imposed [by] both the BVI Business [C]ompanies Act 2004 by the and common law to monitor the activity in the account issue since Amicorp Management was the sole director of the accountholder which had no employees and had directed Insight to send all notices and account statements to it." Insight Surresponse Leave Amend at 2. Though not referenced by name, the Court construes this argument as asserting an extracontractual exception to the *Moorman* Doctrine (should the *Moorman* Doctrine apply). Indeed, one of the three exceptions to the *Moorman* Doctrine is that "a plaintiff may recover despite the economic loss doctrine if the tort committed by the defendant is based on an extracontractual duty

13

separate and apart from their contractual relationship." *Monarch Gems v. Malca-Amit USA, L.L.C.*, 2005 WL 1206426, at \*2 (N.D. Ill. May 4, 2005) (citing *Congregation of the Passion v. Touche & Ross Co.,* 636 N.E.2d 503, 514 (Ill. 1994)); *see also F.D.I.C. v. Masarsky*, 968 F. Supp. 2d 915, 926 (N.D. Ill. 2013) ("Where the *Moorman* doctrine does not bar recovery, a defendant's negligent performance of its undertaking should extend to that class of persons defendant could reasonably have foreseen would be damaged by its negligent performance.") (international quotation and citation omitted).

Admittedly, it is unclear as to whether the Insight Parties have alleged that the Amicorp Parties were indeed "parties" to the underlying account agreements. On the one hand, as the Amicorp Parties highlight, the Revised Amended Counterclaim specifically claims, "as Amicorp Management acknowledged and agreed in its Pershing account agreement," suggesting an allegation that at least Amicorp Management was a party to and subject to the Pershing Account Agreement. Rev. Am. Countercl. ¶ 26. But, on the other hand, the Court acknowledges that Amicorp Management signed the Insight Account Agreement as Clodi's "Director" only, suggesting that Amicorp Management was not itself a signatory to the agreement other than as Clodi's Director. Insight New Account Agreement at 5.

But the Court need not make that specific determination because the Court agrees with the Insight Parties that the extracontractual exception to the *Moorman* Doctrine applies here. The Insight Parties are not just asserting a duty arising from a contractual relationship in the Revised Amended Counterclaim. Rather, they have

14

alleged that the Amicorp Parties owed them an extracontractual duty separate and apart from any contractual relationship. Indeed, the Insight Parties allege that "Amicorp Management knew that Insight was relying upon Amicorp Management's duty to exercise due care, diligence and skill required by Section 122 of the BVI Business [C]ompanies Act 2004" and "customers or their representatives such as Amicorp Management have a duty to monitor I [sic] for their securities account to be aware of unauthorized activity." Rev. Am. Countercl. ¶¶ 25, 49. While the Court does not comment on the sufficiency of such alleged duties now (*but see infra* Section III), the Court finds that the *Moorman* Doctrine does not bar the Insight Parties' negligence allegations here.

## III.   No Duty

Alternatively, the Amicorp Parties contend that even if the *Moorman* doctrine does not render the negligence claim futile, the Insight Parties have still failed to allege the first element of negligence—a duty of care. Amicorp Surreply Leave Amend at 3–4. Specifically, the Amicorp Parties argue that the Revised Amended Counterclaim fails to allege how or why Amicorp Management owed a duty to the Insight Parties, as opposed to owing a duty only to Clodi as Clodi's sole director. *Id.* The Amicorp Parties argue further that Illinois law is clear that a director of a corporation, such as Amicorp Management (director of Clodi), owes a duty "to exercise ordinary care and prudence in the administration of corporate affairs . . . to the corporation and its shareholders, not to third parties (here, the Insight Parties)." *Id.* (quoting *Brown Leasing, Inc. v. Stone*, 672 N.E. 2d 430, 437 (1st Dist. 1996)); *see also*

15

*PharMerica Chi., Inc. v. Meisels*, 772 F. Supp. 2d 938, 960 (N.D. Ill. 2011) ("Corporate officers and directors owe a fiduciary duty to their corporation and its shareholders. But, generally, officers and directors owe no duties to any third parties.").

In response, the Insight Parties insist that because Amicorp Management is a British Virgin Islands (BVI) entity, it owed Clodi the fiduciary duty imposed by Section 122 of the BVI Business Companies Act 2004, which states that:

> [a] director of a company, when exercising powers or performing duties as a director, shall exercise the care, diligence, and skill that a reasonable director would exercise in the same circumstances taking into account, but without limitation, (a) the nature of the company; (b) the nature of the decision; and (c) the position of the director and the nature of the responsibilities undertaken by him.

Insight Reply Leave Amend at 8 (quoting Brit. V.I. Business Companies Act, 2004 § 122). The Insight Parties contend that because Clodi had no employees and Amicorp Management was its sole director to whom all notices were sent, the Insight Parties opened Clodi's account in reliance that Amicorp Management would timely review the documents related to Clodi's account and notify Insight if that review reflected errors. *Id.* at 8–9. Further, the Insight Parties attempt to distinguish the Amicorp Parties' cited cases in a footnote only. *Id.* at 10 n.4. They argue that *Brown Leasing* is factually distinguishable because it dealt solely with the issue of whether directors of a duly organized corporation can be held liable for exercising "without authority corporate powers," and *PharMerica* is factually distinguishable because the liability in that case depended on insolvency. *Id.*

The Court agrees with the Amicorp Parties that the Insight Parties have not alleged that the Amicorp Parties owed them a duty cognizable under Illinois law. As

16

previously discussed, the Court has found that Illinois law governs the negligence claim here. But even if BVI law applied, as the Insight Parties seem to suggest, the Court finds that the Insight Parties stretch Section 122 of the BVI Business Companies Act 2004 too far. Section 122 does not create a duty that a director would owe to a third party; rather Section 122 simply provides that a director must act *reasonably* in performing its duties. *See* Brit. V.I. Business Companies Act, 2004 § 122.

Moreover, the Court is not persuaded by the Insight Parties' attempt to distinguish the Amicorp Parties' cited cases that stand for the proposition that under *Illinois law*, a director of a corporation does not owe a duty to third parties. First, the Amicorp Parties only attempt to distinguish those cases in a footnote, and arguments made in footnotes are typically waived. *See Sanders*, 2016 WL 4009941, at \*10. But second, even entertaining those factually distinguishable arguments, the Court remains unconvinced. The Court finds *Brown Leasing*, especially, to be right on point. In *Brown Leasing*, the plaintiff lender alleged that it was harmed by the negligence of the directors of a bank in not recording certain information and documents in the books and records of the bank and in failing to report information to federal regulators. 673 N.E. 2d at 437. The court held that the bank's directors "owed no duty to the plaintiff which could support a negligence action," as the directors only owed duties "to the corporation and its shareholders, not to third parties." *Id.* This is the same case here, and nothing in the *Brown Leasing* opinion suggests that its findings were limited to scenarios of unauthorized exercises of corporate powers.

17

And finally, the Court finds the Insight Parties' cited Seventh Circuit case, *Prince v. Zazove*, which noted that "[w]hile a corporation can be held liable for the acts of its agents, the directors or officers cannot be held individually liable unless they participated in the conduct giving rise to that liability," to be of little utility. 959 F.2d 1395, 1401. *Prince* comments on whether directors or officers can be held liable in their *individual capacities* to third parties, which has no bearing here, where Amicorp Management is a director *corporation*. *Id.* And, while those individual officers could ostensibly be held liable in their individual capacities, *Prince* does not affirmatively create a duty of care that could be applied here. *Id.*

In sum, the Court agrees that the Insight Parties have not alleged that the Amicorp Parties owed them a duty cognizable under Illinois law. It follows, then, that allowing the Insight Parties to proceed with their proposed amended negligence counterclaim would be futile, because they are not proposing a cognizable duty under Illinois law and accordingly fail to state a claim upon which relief could be granted. As such, the Insight Parties' motion for leave to amend is denied.

## Conclusion

For the foregoing reasons, the Court denies the Insight Parties' motion for leave to amend [77]. In denying the Insight Parties' motion for leave to amend, the originally pled Counterclaim remains the operative counterclaim, and as discussed above, the Insight Parties have withdrawn, as moot, their originally pled declaratory action and contribution counterclaims. With Counterclaim Counts I and II withdrawn, the Court strikes the Amicorp Parties' Motion to Dismiss [55] as moot.

Having already denied the Insight Parties' motion for leave to amend based on futility, the Court, in its discretion, does not permit further amendment. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in . . . dismissing a complaint with prejudice . . . when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). With no remaining claims and further amendment not permitted, this civil case is terminated.

Dated: September 30, 2021

United States District Judge
Franklin U. Valderrama